PRIME BUSINESS Co. *vs.* L. PHILIP DRINKWATER.

Middlesex.    February 10, 1966. — April 29, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Conversion. Secured Transaction. Lien.*

"Equipment" as defined in G. L. c. 106, § 9–109 (2), includes a bulldozer.
   [644]
Evidence in an action, that the plaintiff lent money to one in possession of
   certain equipment, giving him a check in the amount of the loan in
   exchange for a note secured by a chattel mortgage on the equipment,
   that the debtor indorsed the check and signed a completed financial
   statement reciting that the plaintiff's security interest should attach to
   the equipment and that the debtor was the lawful owner thereof and had
   received value, that the financial statement was filed as required by G. L.
   c. 106, § 9–302, and that thereafter the defendant purchased the equip-
   ment from the debtor and refused to deliver it to the plaintiff upon
   demand following default on the debtor's part under the chattel mort-
   gage, warranted findings by the trial judge that the plaintiff's security
   interest had attached to the equipment under § 9–204, that the defendant
   was on notice respecting such interest, and that the defendant was liable
   to the plaintiff for a conversion of the equipment.    [644–645]
One who bought certain equipment in disrepair and after learning of a
   mortgagee's security interest therein made extensive repairs and im-
   provements to the equipment had no lien thereon for his expenditures as
   against the mortgagee.    [645–646]

TORT.    Writ in the First District Court of Eastern Mid-
dlesex dated June 25, 1964.

Upon removal to the Superior Court and subsequent
transfer to the District Court and retransfer to the Supe-
rior Court, the action was heard by *Spring,* J.

*Nyman H. Kolodny* for the defendant.
*Joseph E. Levine* for the plaintiff.

REARDON, J.    This case is before us on the defendant's
exceptions in an action of tort wherein the plaintiff seeks
damages for the conversion of a used Caterpillar D–4 trac-
tor (bulldozer) in which it claims to have a security inter-
est.    The defendant in his answer has alleged that he was

the owner of the bulldozer and that he bought it "in a dilapidated and inoperable condition as a piece of machinery," made extensive repairs on it, and has acquired a lien thereon. There was evidence as follows.

On September 26, 1963, one Vivace, who owed the defendant $200, sold him the bulldozer in exchange for the debt. At the time of the trade the bulldozer needed extensive repairs. It was moved to the defendant's place of business in October, 1963, and shortly thereafter one Leventhal, assistant treasurer of the plaintiff, visited the defendant, "looked it over" from a distance of about 300 feet, and told the defendant that the plaintiff had a chattel mortgage on the bulldozer. At that time Leventhal told Drinkwater that the machine was worthless, as he did on a second visit on November 15, 1963, when he reiterated that "it was in a worthless condition" and "wasn't worth the cost of moving." However, on November 19, 1963, he returned and served a written demand for the bulldozer on the defendant. The defendant testified that the bulldozer was worth, in his informed opinion, approximately $50 at this time and that thereafter he expended $750 in parts and $350 in labor in repairing it.

Testimony from Leventhal indicated that the plaintiff was in the business of selling and financing road building machinery, and that on March 18, 1963, the plaintiff lent Vivace $2,000, giving him a check in that amount and taking in exchange a note for $2,250 secured by a chattel mortgage on the bulldozer. Vivace never made any payments on the mortgage. The financing statements signed by Vivace and Leventhal were recorded some three months later in the office of the city clerk at Salem. He also testified that in his informed opinion the bulldozer was worth between $3,500 and $4,500 on November 19, 1963, when he sought its return, at which time "it had been painted, looked clean, as though it was oiled and greased and it looked in better condition."

Vivace gave testimony that the note he signed had nothing to do with the bulldozer and constituted part of the pur-

chase price of a truck and dump trailer. He testified that later in April of 1963 he endeavored to procure a $2,000 loan from the plaintiff to put the bulldozer "in operating and running condition," that he then signed a note, security agreement, and financing statements in blank, and that Leventhal was to look at the bulldozer before extending him the loan. He further stated that Leventhal later saw the bulldozer and told him that the plaintiff would not lend him the $2,000 because the machine "wasn't worth it." At the close of the evidence the defendant filed certain requests for findings of fact and rulings of law, following which the judge found for the plaintiff in the sum of $2,400.

1. In order to find for the plaintiff it was necessary that the judge find that a security interest had attached to the bulldozer and had been perfected before its sale to the defendant. A bulldozer is "equipment" as defined in G. L. c. 106, § 9-109 (2). General Laws c. 106, § 9-204, provides that a security interest attaches to equipment when (a) there is an agreement that it shall attach; (b) value is given; and (c) the debtor has rights in the collateral. Section 9-302 requires filing to perfect an interest in personal property left in the debtor's possession; § 9-401 states where the agreement must be filed; § 9-402 states the requisites of financing statements; §§ 9-503 and 9-504 state the right to possession and disposition of the collateral by the secured party after a default. Since there were no findings of fact the question is whether, on the evidence contained in the bill of exceptions and referred to above, the trial judge could have reasonably concluded, as he did, that the plaintiff was entitled to recover for conversion in the light of the statutory provisions to which allusion has been made. *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 93. *Orcutt* v. *Signouin,* 302 Mass. 373, 375-376. *Richards* v. *Gilbert,* 336 Mass. 617, 618. By the terms of the agreement dated March 18, 1963, Vivace agreed that the security interest should attach and stated that he had received value and that he was the lawful owner of the bulldozer. Thus the security interest did attach under G. L. c. 106, § 9-204. The judge could have found that the security agreement

was completed before it was signed by Vivace. See G. L. c. 106, § 1–202. The judge could also have found that Vivace received value, the $2,000 check. See G. L. c. 106, § 1–201 (44) (d). The genuineness of Vivace's signature in indorsing the $2,000 check was not challenged by the defendant and was, therefore, admitted. G. L. c. 231, § 29. G. L. c. 106, § 3–307. Although there was delay in the filing of the financing agreements that filing did take place three months before the defendant purchased the bulldozer and he was thereby on notice regarding the plaintiff's security interest.

2. Under G. L. c. 106, § 9–503 and § 9–504, the plaintiff had "on default the right to take possession of the collateral" and "to sell, lease, or otherwise dispose of . . . [it]." See *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.* 343 Mass. 622, 628. We thus conclude that the defendant's purchase and retention of the bulldozer constituted a conversion which began on September 26, 1963, the date of his trade with Vivace. *New England Road Mach. Co.* v. *Quincy Oil Co.* 290 Mass. 242, 243, 244. *Donahue* v. *Leventhal,* 302 Mass. 393, 394. *Lehan* v. *North Main St. Garage, Inc.* 312 Mass. 547, 548. Restatement 2d: Torts, § 223 (d) and (g), and § 229.

3. The defendant has made extensive repairs and improvements to the bulldozer. The judge could properly have found that he had notice of the plaintiff's claim of title to it before he made the improvements. There was evidence that Leventhal had told him of the plaintiff's interest, following which he proceeded to his repair work. The judge without elaboration finds for the plaintiff in the amount of $2,400. We are inclined to agree with the plaintiff that the judge, adopting Leventhal's lowest estimate, placed a value of $3,500 on the bulldozer following improvements by the defendant and then allowed the defendant $1,100 for the parts and labor which he testified he had invested in repairs.

If the result of the judge's finding was to pay the plaintiff more than was owed it on the debt which was secured by the bulldozer then any principal amount beyond the debt

is returnable to Vivace, the debtor. *W. & R. Inv. Co.* v. *Edwards Supply Co.* 304 Mass. 650, 652. *Bell Fin. Co.* v. *Gefter,* 337 Mass. 69, 72–73. *Equitable Credit Corp.* v. *Treadwell,* 338 Mass. 99, 102–103. There was no error in the denial of the defendant's requests for rulings nor was the finding of the trial judge inconsistent with such rulings as he allowed save in the instance of request No. 17, the effect of the allowance of which was to recognize a lien in the defendant for his expenditures in restoring the bulldozer which placed the defendant in a more favorable position than that to which he was entitled. *McMillan* v. *Wickstrom,* 244 Mass. 159, 164. *Flaherty* v. *Collins,* 318 Mass. 153, 156. See *Stevens* v. *Baker,* 215 Mass. 30, 31.

*Exceptions overruled.*