MILWAUKEE MACK SALES, INC., Plaintiff-Appellant, v.
FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE,
Defendant-Respondent: FRANKS, Intervenor.

Supreme Court

*No. 77–377. Submitted on briefs January 9, 1980.—
Decided February 7, 1980.*
(Also reported in 287 N.W.2d 708.)

For the respondent the cause was submitted on the brief of *Michael P. Erhard* and *Foley & Lardner* of Milwaukee.

HEFFERNAN, J.  The plaintiff, Milwaukee Mack Sales, Inc., commenced an action against the defendant, First Wisconsin National Bank of Milwaukee, asserting the priority of its security interest over the claim of First Wisconsin in the proceeds from the sale of a truck which had been owned by B. F. Leasing, Inc., which was indebted to both the plaintiff and the defendant. Based on the exhibits of record and the stipulation of facts entered into by counsel, the trial court granted the Bank's motion for summary judgment after concluding that the Bank was entitled to all of the proceeds from the sale of a 1976 Mack Truck, VID No. WS786LST26350. Mack Sales appeals from that judgment.

The intervenor, Barnett W. Franks, the debtor's receiver, is not a party to this appeal.

Both Mack Sales and the Bank claim a security interest in the truck, Mack Sales' acknowledged security interest arose as a result of a written sales contract dated December 22, 1975, when the vehicle was sold to B. F. Leasing, Inc., pursuant to a written contract for time payments which provided that "[a] security interest in the property shall remain and continue [in Mack Sales] . . . until the time balance is paid in full."

The security interest asserted by the Bank in this action arose on November 19, 1975, when, in exchange for valuable consideration, B. F. Leasing, Inc., executed a General Security Agreement with the defendant Bank which granted the Bank "a security interest in all debtor's equipment . . . whether now owned or hereafter acquired . . . ."

Mack Sales takes the position that the purchase money security interest which it obtained by the sales contract was perfected when it physically repossessed the vehicle

on May 10, 1976; and it asserts that, because of an inadequate description in the Bank's General Security Agreement of November 19, 1975, no security interest attached and any attempted perfection of the Bank's security interest was a nullity, because "the respondent has perfected an invalid security interest." Mack Sales asserts that the document which purports to grant a security interest to the Bank is insufficient, because the word, "equipment," does not adequately describe the after-acquired truck to which the Bank's security interest purportedly attaches. Mack Sales views the litigation simply as a case in which it has perfected its security interest and the respondent Bank has no security interest whatsoever.

As so viewed, this dispute could be resolved by simply concluding, as we do herein, that "equipment" was a sufficiently descriptive word to grant the Bank a security interest in the after-acquired property. We do not, however, believe that the priority of these claims can be resolved as simplistically as is asserted by the parties to this dispute.

The complexities of the case arise because both parties base their arguments entirely on ch. 409, Stats., governing secured transactions under Wisconsin's Commercial Code and ignore the fact that this court has heretofore held that ch. 342 of the Motor Vehicle Code, and not ch. 409, Stats., governs the perfection of security interest in motor vehicles.

The stipulation of facts details the transactions involving the sale by Mack Sales to B. F. Leasing of three trucks and the financing of B. F. Leasing by the Bank. The sale dates were August 27, September 17, and December 22, 1975. Only the priority of the claimants to the proceeds of the sale of the third truck, the one sold to B. F. Leasing on December 22, 1975, is involved in this litigation. The transactions in respect to the first two sales are only relevant in that they show, arguably

at least, the course of conduct of the parties leading up to the transaction involving the third truck.

When the first two trucks were purchased by B. F. Leasing on August 27 and September 17, Mack Sales retained, by written contract, a security interest in the property until the time balance was paid in full. Mack Sales prepared title applications for the debtor and stapled to the applications Motor Vehicle Department Form MVD 2075, *Notice of Security Interest Perfection.* The debtor removed the *Notice of Security Interest Perfection* and submitted only the application for title. Accordingly, B. F. Leasing received certificates of title which showed no lien encumbrance.

On November 19, 1975, for valuable consideration, the debtor executed a General Security Agreement, which granted the First Wisconsin National Bank of Milwaukee "a security interest in all Debtor's *equipment* . . . whether now owned or hereafter acquired . . . ." (Emphasis supplied.) Money was advanced to the debtor by the Bank during the months of November and December 1975. On November 25, 1975, for valuable consideration, the debtor executed a Chattel Security Agreement to the Bank in respect to the two trucks purchased by the debtor in August and September. At the same time, the debtor gave the Bank the certificates of title, which showed no encumbrances. On November 28, 1975, the Bank filed with the Secretary of State a copy of the Financing Statement, which referred to the previously executed General Security Agreement dated November 19. This statement reiterated that the Bank had a security interest in all of B. F. Leasing's equipment "whether now owned or hereafter acquired."

On December 22, 1975, Mack Sales sold a third truck to the debtor "for use as *equipment* by B. F. Leasing, Inc., in its trucking business." (Emphasis supplied.) [1]

---

[1] Paragraph 8, Stipulation of Facts.

In the sales contract a security interest was retained by the seller with respect to this third truck in words substantially identical to those used in the transactions involving the first two trucks. When Mack Sales sold this third vehicle—the vehicle which is the subject of this litigation—it again prepared an application for title and a Motor Vehicle Department *Notice of Security Interest Perfection* and delivered them to the debtor. Once again the debtor removed the *Notice of Security Interest Perfection* form, submitted only the application for title to the Motor Vehicle Department, and received an unencumbered title.

On February 13, 1976, the Bank renewed the notes for the balances due on money previously advanced to the debtor, and the debtor delivered to the Bank the certificate of title to the third truck, showing no encumbrance. The Bank then unilaterally amended the Chattel Security Agreement which the debtor had executed on November 25, 1975, by adding to the agreement the serial number of the third truck. No one on behalf of the debtor signed the agreement after the amendment made by the Bank.

On March 29, 1976, the Bank filed with the Motor Vehicle Department a *Notice of Security Interest Perfection* for each of the three vehicles and the three unencumbered certificates of title. The notices referred to the Bank's November 25, 1975, Chattel Security Agreement. The Bank received a certificate showing that the First Wisconsin National Bank was a secured party covering "a 1976 Mack tractor . . . WS786LST26350," the third vehicle purchased by the debtor.[2]

Subsequently, on May 10, 1976, the seller physically repossessed the truck sold on December 22, 1975. By

---

[2] We are not concerned in this litigation with the Bank's attempted perfection of its security interest in regard to the first two trucks purchased.

stipulation of the parties, the proceeds of the foreclosure sale of the truck in the sum of $23,657.58 were deposited with the clerk of circuit court pending the resolution of this case.

Based on the stipulation of facts, the trial court, without explaining its reasoning, granted summary judgment to the Bank.

On this appeal the debtor appears to concede that the Bank's filing of the Financing Statement with the Secretary of State on November 28, 1975, would have constituted a proper perfection if the description therein, "all Debtor's equipment," was sufficient to describe the after-acquired truck. It asserts that that description was insufficient to grant any security interest. It also contends —correctly we conclude—that the Chattel Security Agreement dated November 25, 1975, was a nullity in respect to the third truck, because the description of that truck was added to the agreement unilaterally and no officer of the debtor signed that agreement, as is required by sec. 409.203 (1) (a), Stats., subsequent to the amendment.

The Bank relies not at all upon the November 25, 1975, Chattel Security Agreement but asserts that "equipment" as used in the November 19, 1975, agreement was sufficient to describe the after-acquired truck. Under that reasoning the filing of the Financing Statement with the Secretary of State perfected the security interest of the Bank on November 28, 1975, and would entitle it to a clear priority over the seller, who does not assert a perfection of its own security interest until May of 1976.

The problem with both positions asserted is that the parties completely overlook this court's discussion of the interaction between the Motor Vehicle Code and the Commercial Code in regard to creating and perfecting security interests in motor vehicles. In *National Ex-*

*change Bank of Fond du Lac v. Mann,* 81 Wis.2d 352, 357, 260 N.W.2d 716 (1978), the court stated that:

"Sec. 409.302(3) of the Wisconsin Commercial Code provides that compliance with its filing provisions is not necessary or effective to perfect a security interest in property subject to the security interest provisions of the vehicle title statute. *See,* secs. 342.19 and 342.20, Stats. *This method of perfecting a security interest in vehicles subject to the vehicle registration statutes is exclusive.* Sec. 342.24, Stats.

"*Nevertheless, even though the perfection of a security interest in a motor vehicle may be governed by the provisions of the title statutes, the creation of the security interest is governed by the Commercial Code.* 1 G. Gilmore, *Security Interests in Personal Property,* sec. 20.5 at 566 (1965). The vehicle title law incorporates for the purposes of its provisions the definitions given the terms 'secured party,' 'security agreement' and 'security interest' by the Commercial Code. Sec. 340.01 (56m)–(56-o), Stats. Presumably, then, to perfect a security interest under the vehicle title law, it must be created in accordance with the Commercial Code." (Emphasis supplied.)

Although, under the reasoning of *National Exchange Bank,* security interests in motor vehicles may attach by compliance with the provisions of the Commercial Code, the provisions in the Commercial Code which relate to the perfection of the security interest are wholly ineffective in respect to motor vehicles. A security interest in a motor vehicle subject to the vehicle registration statutes can only be perfected by compliance with sec. 342.19, Stats. It is therefore clear that the Bank's filing of a Financing Statement with the Secretary of State failed to perfect an interest in the truck. Although it is possible to acquire a security interest in a motor vehicle by the operation of an after-acquired property clause, it is patently impossible to perfect that security interest until the debtor acquires the vehicle and the secured party has possession of the certificate of title.

When the Bank submitted the certificate of title to the Motor Vehicle Department on March 29, 1976, together with the appropriate *Notice of Security Interest Perfection,* it followed the exclusive method given by law for the perfection of a security interest. However, it sought to perfect the security interest in the third truck allegedly granted by the agreement of November 25, 1975, but no security interest arose as a result of that document, because the unilateral amendment to include the third truck's description was not followed by a signing on behalf of the debtor, as required by sec. 409.203 (1) (a), Stats. That subsection provides that a security interest is not enforceable *per se* unless "the debtor has signed a security agreement which contains a description of the collateral," and otherwise conforms to the statutory requirements. Only if we can hold, despite the Bank's inappropriate reference to the Chattel Security Agreement of November 25, that the perfection in fact relates to the General Security Agreement of November 19 and the description in that General Security Agreement is sufficient can we conclude that the Bank's security interest was perfected.

It is apparent in any event that the seller failed to perfect its purchase money security interest, as required by ch. 342, Stats. The obligation to perfect a security interest is wholly upon the secured party. Sec. 342.22, Stats. Thus, the fact that the seller's efforts to perfect its security interest were frustrated by the debtor's fraudulent removal of the *Notice of Security Interest Perfection* cannot operate to relieve the seller of its own negligence in failing to carry out the filing with the Motor Vehicle Department that is required by statute. Moreover, because sec. 342.19 provides for the exclusive manner of perfecting security interests in motor vehicles, the seller's eventual repossession of the truck—which would have been sufficient were sec. 409.305 applicable—did not per-

fect its security interest. The seller, Mack Sales, never perfected a security interest in the third truck.

If we conclude that the Bank's General Security Agreement contained language sufficient to identify the third truck as after-acquired "equipment," it is apparent that the Bank's security interest attached on November 19, 1975. This is more than a month before the attachment of the seller's security interest, which arose out of its sales contract of December 22, 1975. As between these two security interests, if both are unperfected, the Bank has priority. This conclusion is dictated by sec. 342.19 (3), Stats., which provides that "an unperfected security interest [in a motor vehicle] is subordinate to the rights of persons described in s. 409.301." Subsection (a) of the latter provision refers in turn to sec. 409.312, Stats., which states at subsection (5)(b) that "[s]o long as conflicting security interests are unperfected, the first to attach has priority."[3]

The rationale set forth above presupposes, however, that a security interest was created by the words in the General Security Agreement dated November 19, 1975. The words used in the agreement granted to First Wisconsin National Bank of Milwaukee "a security interest in all Debtor's *equipment* . . . whether now owned or hereafter acquired." (Emphasis supplied.)

The description requirement set forth in sec. 409.203, Stats., for security agreements differs in language and purpose from the requirements in sec. 409.402 for financing statements. As noted in White and Summers, *Uniform Commercial Code* (Hornbook Series 1972), sec. 23–3, at 787–88:

"The two description requirements are intended to perform different functions and they offer different in-

[3] It is clear from sec. 409.203(1)(a), Stats., that "attach," as used in sec. 409.312(5)(b), refers to the attaching of security interest that arises out of a security agreement and does not relate to a levy or physical repossession or seizure of the collateral.

terpretive questions. The function of 9–203 is that of a statute of frauds; it is designed to minimize disputes between parties to the transaction over whether an agreement exists and over whether a certain item of collateral is or is not included in the security agreement. The function of the description in 9–402 is to put third parties on notice of the secured creditor's claim. In the view of some, tests for acceptable descriptions under the two sections should differ because the functions of the sections are different; the tests may also differ because 9–402(5) explicitly validates a financing statement although it 'contains minor errors which are not seriously misleading.' Section 9–203 does not include a similar validating proviso with respect to defects in a security agreement under 9–203."

Despite these differences, White and Summers conclude "that the standards under 9–203 and 9–402 should not be different and that courts should validate rather broad descriptions under either of them." *Id.*

Sec. 409.109, Stats., classifies "goods" as "equipment" if the goods are "used or bought for use primarily in business . . . ." The Official Uniform Commercial Code Comment to sec. 409.109 notes at subsection (5) that:

"The principal definition of equipment is a negative one: goods used in a business . . . which are not inventory . . . . *Trucks,* rolling stock, tools, machinery are typical. . . . *goods which are not covered by one of the other definitions in this section are to be treated as equipment.*" (Emphasis supplied.)

Although this court has not previously considered whether a description of collateral as "equipment" now owned or hereafter acquired covers an after-acquired truck, courts in other jurisdictions have reached precisely that conclusion where the debtor was, as in the present case, in the trucking business. *See, e.g., In re Dobbins,* 371 F. Supp. 141 (Kan. 1973); *In re Bloomingdale Milling Co., Inc.,* 4 U.C.C. Rptr. 256 (W.D. Mich. 1966); *cf., Security Bank & Trust Co. v. Blaze Oil Co.,* 463 P.2d 495

(Wyo. 1970) ; *Prime Business Co. v. Drinkwater*, 350 Mass. 642, 216 N.E.2d 105 (1966).

Sec. 409.110, Stats., provides that:

"For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The Official Uniform Commercial Code Comment to sec. 409.110 notes that:

"The requirement of description of collateral (see Section 9–203 and Comment thereto) is evidentiary. *The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it— that it make possible the identification of the thing described.* Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test. . . ." (Emphasis supplied.)

The question of the description's sufficiency essentially boils down to whether a description of all of a trucking company's equipment reasonably identifies trucks. The answer is yes. As White and Summers observe:

"Most of the courts interpreting 9–203(1)(b) have been comparatively generous to the secured creditor. . . . Of course if we are to carry out the draftsmen's intention and permit the secured creditor to claim a perfected security interest in after acquired property, comparatively general descriptions of the collateral must suffice for it would be impossible in most such cases for the secured creditor to describe the collateral with any greater precision at the beginning of the agreement. It will always be possible for a court to find that the collateral in question is not covered by the description given and is not therefore part of the agreed collateral. In our judgment, a minority of courts have been unduly illiberal and have required more 'description' than 9–203 and 9–110 contemplate." White and Summers, *supra* at 789.

It should also be noted that Paragraph 8 of the stipulation entered into by the seller, Mack Sales, in respect to the sale of the truck on December 22, 1975, explicitly states that Mack Sales sold the truck in question to B. F. Leasing "for use as equipment . . . in its trucking business." We think that this statement in the stipulation amounts to a further recognition of the position set forth in this opinion that, in the framework of these transactions, the parties appropriately considered the truck as "equipment." It is eminently clear that, in the context of this case and in light of the general guidelines for the construction of the Commercial Code, the term, "equipment," was sufficient to give First Wisconsin a security interest in the after-acquired truck.[4]

We also hold that First Wisconsin perfected its security interest when it filed the appropriate documents with the Motor Vehicle Department on March 29, 1976. Sec 342.19 (2), Stats., provides:

". . . a security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the secured party, and the required fee. It is perfected as of the time of its creation if such delivery is completed within 10 days thereafter . . . otherwise as of the time of such delivery."

---

[4] Mack Sales' remaining objection to the General Security Agreement is that the parties to that agreement never intended, within the meaning of sec. 409.105(1)(l), Stats., to create a lien against the after-acquired truck. This contention poses a factual question regarding the Bank and the debtor's intent at the time the agreement was executed and is impossible to resolve on the basis of the stipulated facts. Given the stipulated facts in this case, the question of intent to create a security interest in the after-acquired truck is essentially indistinguishable from the question of the sufficiency of the collateral description provision. Having determined that the after-acquired "equipment" provision reasonably identified the truck, we conclude, in the absence of any evidence to the contrary, that the Bank and the debtor intended to create a security interest in everything described as collateral.

As we have stated above, a security interest attached or was created when the parties were signatory to the General Security Agreement containing the after-acquired equipment provision. Under the Motor Vehicle Department statutes, it was impossible for the seller to perfect its security interest until it had the certificates of title in hand. This it did. If it is determined, as we do herein, that a security interest in the very vehicle which was described in the certificate of title exists, then the filing of that certificate, together with a notice of the perfection of a lien, is sufficient. The fact that the Bank erroneously ascribed its security interest to the invalid document of November 25, 1975, does not vitiate the existing security interest obtained under the General Security Agreement.

Neither the statutes nor the Motor Vehicle regulations requires reference to a specific security agreement. All that is required is that there be one. Even though, in the instant case, the date of agreement which appears on MVD Form 2075 was erroneous, no one was misled thereby. Where, as here, the contending creditor, Mack Sales, never assumed its responsibility in seeing to the proper perfection of its lien, it cannot be said that it was in any way prejudiced by the reference to the inappropriate or incorrect date of an agreement. In the absence of a statutory provision requiring a correct date of agreement, we decline to hold that it is essential to the perfection of a valid pre-existing security interest. Only if the incorrect date were shown to mislead or prejudice a third party would such incorrectness or error be even arguably pertinent to the determination of the priorities of the respective creditors.

First Wisconsin National Bank of Milwaukee perfected its security interest on March 29, 1976, when it filed the certificate of title with the Motor Vehicle Department, together with a sufficient notice that it

had a pre-existing security interest. Milwaukee Mack Sales, Inc., failed to perfect the security interest that attached at the time of the sale. The Bank is entitled to the proceeds derived from the sale of the truck.

*By the Court.*—Judgment affirmed.

COFFEY, J., took no part.