In re CORSICA ENTERPRISES, INC., Debtor.

UNITED NATIONAL BANK, Plaintiff,

v.

CORSICA ENTERPRISES, INC., and Rick A. Yarnall, Trustee, Defendants.

Bankruptcy No. 482–00287.
Adv. No. 483–0246.

United States Bankruptcy Court, D. South Dakota.

June 8, 1984.

John E. Burke, Sioux Falls, S.D., for plaintiff.

Clair R. Gerry, Stuart & Gerry, Sioux Falls, S.D., for defendant Corsica Enterprises, Inc.

Rick A. Yarnall, trustee pro se, Moore, Rasmussen, Sabers & Kading.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The facts of the instant matter are not in dispute. Corsica Enterprises, Inc. (debtor), executed a promissory note and security agreement in favor of the United National Bank (bank), Canistota Branch, in the amount of $237,000.00 on March 1, 1979. The bank filed a financing statement with the South Dakota Secretary of State covering "[a]ll contract rights, accounts receivable, inventories, machinery, equipment, furniture, fixtures, leaseholds, and all other property both tangible and intangible" on March 9, 1979. The debtor filed its chapter 11 petition in bankruptcy on October 15, 1982. The Court converted the case to a chapter 7 liquidation on June 20, 1983.

The bank filed a complaint on September 19, 1983, requesting the Court to determine that it had a perfected security interest in four trailer fertilizer spreaders heretofore used by the debtor and further praying for an order requiring the trustee in bankruptcy to abandon the spreaders. *See* 11

U.S.C. § 554. The trustee's answer alleges the bank's failure to perfect its security interest by noting a lien on the spreaders' certificates of title. The trustee has sold the spreaders and holds their proceeds, $3,850.00, pending the Court's resolution of this controversy.

In essence, the instant matter is a struggle between creditors. The bank contends that it has a perfected security interest in the spreaders. The trustee, however, who represents the interests of all the unsecured creditors, insists that the bank's security interest in the spreaders is unperfected and, thus, inferior to the position of the trustee. The trustee derives his position from the so-called "strong arm clause" of 11 U.S.C. § 544(a), which reads as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and
>
> (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Subparagraph 544(a)(1) is the provision that is particularly applicable to this controversy. Under section 544(a)(1), the trustee is given the position, as of the date the petition in bankruptcy is filed, of a judicial lienholder on all of the property of the debtor on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor actually exists and regardless of notice of any existing encumbrances. The strong arm clause gives the trustee a pervasive position, the power of which is ultimately defined by substantive state law. 4 *Collier on Bankruptcy* ¶ 544.02 (15th ed. 1979).

The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." *See* 11 U.S.C. § 101(28). The Code further defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *See* 11 U.S.C. § 101(27). The status of the trustee as a lien creditor is recognized in South Dakota's version of Article Nine of the Uniform Commercial Code: [1]

> A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.

S.D.C.L. § 57A–9–301(3) (1980).

In addition, S.D.C.L. § 57A–9–301(1)(b)

---

**1.** All citations to S.D.C.L. chapter 57A–9 and S.D.C.L. chapter 32–3 are to the statutes that existed and governed on March 1, 1979, the date

(1980)[2] provides that a lien creditor takes priority over an unperfected security interest in the same collateral if the lien creditor becomes a lien creditor without the knowledge of the competing security interest and before it is perfected. Furthermore, S.D. C.L. § 44–2–1 (1983) generally establishes a first in time rule for determining the priority of liens, all other things being equal.

Upon considering the position of the trustee as a judicial lienholder on the date of the bankruptcy petition and the trustee's superior position to the holder of an unperfected security interest, the question presented is clear: Whether the bank had a perfected security interest in the spreaders prior to October 15, 1982, the day the instant petition was filed.[3] If the bank had a perfected security interest in the spreaders prior to the date of the petition, the bank is entitled to the proceeds from the sale of the spreaders. The trustee, however, prevails under S.D.C.L. § 57A–9–301(1)(b) and (3) (1980) if the bank was unperfected on the date of the petition.

The bank presents four arguments in support of its claim to a perfected security interest in the spreaders. First, the bank insists that its security interest was automatically perfected without filing a financing statement by virtue of S.D.C.L. § 57A–9–302(1)(c) (1980). Second, the bank contends that it has a perfected security interest in the spreaders under S.D.C.L. § 57A–9–302(1)(c) (1980) because it has filed a financing statement on a motor vehicle required to be licensed. Third, the bank ar-

gues that the spreaders are exempt from certificate of title requirements pursuant to S.D.C.L. § 32–3–2.2 (1976), and, therefore, the bank's filing with the Secretary of State perfects its security interest in the spreaders. Finally, the bank insists that the debtor's failure to disclose the existence of the bank's liens to the Secretary of State when applying for a certificate of title for one of the spreaders, in accordance with S.D.C.L. § 32–3–18 (1976),[4] precludes the trustee from prevailing over the bank.

The trustee asserts two theories in support of his position that the bank was unperfected on the date of the bankruptcy petition. First, that the spreaders are within the purview of S.D.C.L. chapter 32–3 (1976) (addressing title registration liens and transfers), and, thus, the bank's failure to note its lien on the certificates of title renders its security interest in the spreaders unperfected. Second, if the spreaders are "farm vehicles" and thus within the exemption provided by S.D.C.L. § 32–3–2.2 (1976), the bank's central filing leaves it unperfected because S.D.C.L. § 57A–9–401(1)(a) (1980) required a local filing to perfect a security interest in farm equipment at the time the bank's security agreement attached.

The bank's first two arguments are not persuasive. An examination of the text of S.D.C.L. § 57A–9–302 (1980), which prescribes when a financing statement must be filed to perfect a security interest and to what security interests the filing provisions of Article Nine do not apply, is instructive:

---

the bank obtained a security interest in the spreaders.

2. "Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

. . . .

(b) A person who becomes a lien creditor without knowledge of the security interest and before it is perfected."

3. Although this case was converted from a chapter 11 to a chapter 7, the trustee's position as judicial lien creditor arises on the date the chapter 11 was filed. See 11 U.S.C. § 348.

4. Application for a certificate of title shall be made to the secretary of public safety upon a

form prescribed by him, containing a full description of such vehicle with motor and serial numbers, if any, a statement of applicant's title and all liens and encumbrances thereon, the county in which the vehicle is to be kept, the names and addresses of the holders of all liens, title reservations and encumbrances thereon, and such other information as the secretary of public safety shall require, and shall be accompanied by a fee of two dollars. If a certificate of title has previously been issued for such motor vehicle, trailer or semitrailer in this state, it shall be accompanied by such certificate of title duly assigned, unless provided for in this chapter.

(1) A financing statement must be filed to perfect all security interests except the following:

(a) A security interest in collateral in possession of the secured party under § 57A–9–305;

(b) A security interest temporarily perfected in instruments or documents without delivery under § 57A–9–304 or in proceeds for a ten-day period under § 57A–9–306;

(c) A purchase money security interest in farm equipment having a purchase price not in excess of twenty-five hundred dollars; but filing is required for a fixture under § 57A–9–313 or for a motor vehicle required to be licensed;

(d) A purchase money security interest in consumer goods; but filing is required for a fixture under § 57A–9–313 or for a motor vehicle required to be licensed;

(e) An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;

(f) A security interest of a collecting bank (§ 57A–4–208) or arising under the chapter on sales (see § 57A–9–113) or covered in subsection (3) of this section.

(2) If a secured party assigns a perfected security interest, no filing under this chapter is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

(3) The filing provisions of this chapter do not apply to a security interest in property subject to a statute

(a) Of the United States which provides for a national registration or filing of all security interests in such property; or

(b) Of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

(4) A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.

S.D.C.L. § 57A–9–302(1)(c) provides for the automatic perfection of purchase money security interests in farm equipment having a purchase price not in excess of $2,500.00. S.D.C.L. § 57A–9–107 (1980) defines a purchase money security interest as follows:

A security interest is a "purchase money security interest" to the extent that it is

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Nothing in the record before the Court indicates that the bank made the advances that enabled the debtor to purchase the spreaders. There is certainly no dispute that the bank did not sell the spreaders to the debtor. In fact, the best the Court can make of the situation is that the debtor owned the spreaders prior to March 1, 1979, when the bank first extended credit to the debtor. Consequently, even assuming that the spreaders had a purchase price of $2,500.00 or less, the bank was not entitled to automatic perfection because it was not a purchase money lender. Furthermore, the existence of future advance and antecedent debt clauses in the bank's security agreement destroys the "purchase money" character of its security interest in any event. *See In re Simpson,* 4 U.C.C. Rep.Serv. (Callaghan) 250, 254–55 (W.D. Mich.1966).

While it is true that S.D.C.L. § 57A–9–302(1)(c) (1980) states that a "filing is required for a . . . motor vehicle required to be licensed," this provision should not be read out of context with the remainder of the statute. S.D.C.L. § 57A–9–302(3) and (4) clearly indicate that the filing provisions

of Article Nine do not apply to a security interest covered by a statute which requires notation of the security interest on a certificate of title. S.D.C.L. § 32–3–41 (1976) essentially requires that a lien on a motor vehicle or trailer required to be licensed must be noted on the certificate of title if it is to be effective against the creditors of the debtor-owner. "Trailer" is defined in S.D.C.L. § 32–3–1(9) (1976) as: "'Trailer,' any vehicle without motive power designed for carrying property or passengers wholly on its own structure and for being drawn by a motor vehicle." Clearly, the spreaders are "trailers" under South Dakota law. S.D.C.L. § 32–3–5 (1976) requires a certificate of title for a trailer. Therefore, unless the bank can establish that the spreaders are exempt from S.D.C.L. chapter 32–3 (1976), a security interest in the spreaders could only be perfected by notation of the security interest on the certificate(s) of title. The case law supports this conclusion. *Milwaukee Mack Sales, Inc. v. First Wisconsin Nat. Bank of Milwaukee*, 93 Wis.2d 589, 287 N.W.2d 708, 28 U.C.C.Rep.Serv. (Callaghan) 540 (1980); *In re Buckley*, 5 B.R. 503, 29 U.C.C.Rep.Serv. (Callaghan) 1042 (D.Minn.1980); *In re McKeon*, 7 B.R. 10, 29 U.C.C.Rep.Serv. (Callaghan) 1445–46 (Bkrtcy.N.D.Fla.1980).

■ This raises the bank's third argument which alleges that the spreaders fall within the exemption from requirements of a certificate of title found in S.D.C.L. § 32–3–2.2 (1976):

Any farm vehicle designed and used primarily for tillage, for harvesting, or wagons and other implements of husbandry, drawn by another vehicle, if the use thereof is confined to agricultural purposes or to the conveyance of agricultural products and the transportation of farm property by or for the producers thereof, from farm to farm within his vicinity or from local community or market to farm or from farm to a local community or market, shall be exempt from the provisions of this chapter.

The Court finds little merit in the bank's attempt to bring the spreaders within the exemption contemplated by S.D.C.L. § 32–3–2.2 (1976). S.D.C.L. § 32–3–2.2 (1976) speaks to using trailers (wagons) for "agricultural purposes" and for "the conveyance of agricultural products and the transportation of farm property by or for the producers thereof." Farmers are not the producers of the fertilizer that was carried in the spreaders that are the center of this controversy. Moreover, this Court further concludes that the term, "agricultural purposes," must be narrowly construed to mean used by farmers themselves, not used by a commercial business. Thus, the Court must conclude that the spreaders as used by the debtor are not exempt from the certificate of title requirements of S.D.C.L. chapter 32–3 (1976) and, consequently, any lien on the spreaders must be noted on the certificates of title to be perfected in accordance with S.D.C.L. § 32–3–41 (1976).

The Court is aware of numerous decisions that define "farm equipment" and "equipment used in a farming operation" as the terms are used in S.D.C.L. § 57A–9–302(1)(c) (1980) and S.D.C.L. § 57A–9–401(1)(a) (1980), respectively. *Sequoia Machinery, Inc. v. Jarrett*, 410 F.2d 1116, 6 U.C.C.Rep.Serv. (Callaghan) 476 (10th Cir. 1969) (custom harvester's combines were "farm equipment" as drafters of the Uniform Commercial Code carefully avoided defining "equipment used in a farming operation" in terms of occupational status or contractual arrangements of debtor-user); *Citizen's National Bank in Ennis v. Sperry Rand Corp.*, 7 U.C.C.Rep.Serv. (Callaghan) 961 (Tex.1970); *In re Frazier*, 16 B.R. 674, 33 U.C.C.Rep.Serv. (Callaghan) 1160–61 (Bkrtcy.M.D.Tenn.1981); *In re Houts*, 31 U.C.C.Rep.Serv. (Callaghan) 338 (N.D.N.Y.1981). Doubtless, if "farm vehicle ... wagons and other implements of husbandry," as referred to in S.D.C.L. § 32–3–2.2 (1976), were given the same meaning as "farm equipment" under Article Nine, the spreaders as used by the debtor would be exempt from certificate of title requirements. It is important to realize, however, that, although the Article Nine

analogy may be interesting, it is not controlling. S.D.C.L. § 32–3–2.2 (1976) is not the product of uniform legislation, but, instead, a creation of the South Dakota Legislature. Motor vehicle statutes perform a different function than secured transactions law. This Court is unwilling to conclude that the South Dakota Legislature intended the exemption provided in S.D.C.L. § 32–3–2.2 (1976) to be as far-reaching as some courts have construed "farm equipment" under the Uniform Commercial Code.

Moreover, even if one assumed that the exemptions contemplated in S.D.C.L. § 32–3–2.2 (1976) should be interpreted along the lines of "farm equipment" under Article Nine, the bank would still be unperfected. This is true because S.D.C.L. § 57A–9–401(1)(a) (1980)[5] requires a local filing for farm equipment. The bank, by its own admission, has only filed centrally. Consequently, in any event, the bank is in a no-win situation.

Finally, the bank's contention that the debtor should not be allowed to profit from its own duplicity must be addressed. Although S.D.C.L. § 32–3–18 (1976) requires one who applies for a certificate of title to disclose any encumbrances on a trailer to be titled, only one of the four spreaders in question was licensed subsequent to the date of the bank's security interest. The bank did not request the three existing certificates of title so that encumbrances could be properly noted. The bank was evidently either unaware of the necessity of having liens noted on the titles or confident that its centrally filed financing statement perfected its security interest.

Regardless, the debtor will not and has not benefited from its failure to advise the Secretary of State about the existence of a lien against the spreader that was titled after the bank obtained its security interest. No competing liens obtained superior priority by being noted on the certificates. More likely than not, the debtor was merely attempting to stay in good graces with the State Highway Patrol. As was discussed earlier, the unsecured creditors will benefit from the bank's failure to perfect its security interest in the spreaders, not the debtor. Accordingly, this Court is unable to conclude that the debtor's apparently ignorant failure to disclose liens when applying for a certificate of title on one of the spreaders precludes the trustee from prevailing over the bank.

In conclusion, the trustee obtained a judicial lien on the spreaders on October 15, 1982, by virtue of 11 U.S.C. § 544(a)(1) and S.D.C.L. § 57A–9–301(1)(b) and (3) (1980). As of October 15, 1982, the date the bankruptcy petition was filed, the bank had an unperfected security interest in the spreaders as fully discussed in the foregoing analysis. Under S.D.C.L. § 57A–9–301(1)(b) and (3) (1980), the trustee in bankruptcy, as a lien creditor, has priority over the bank's unperfected security interest. Consequently, the trustee is entitled to the proceeds of the four spreaders.

All of the above constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52. The trustee is directed to submit a proposed Order and Judgment, consistent with the Court's Findings of Fact and Conclusions of Law, in accordance with Bankr.R.P. 9021. The Order and Judgment must be submitted to the Clerk of this Court forthwith.

---

5. The proper place to file in order to perfect a security interest is as follows:
(a) When the collateral is equipment used in farming operations or consumer goods, is in the office of the register of deeds in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the register of deeds in the county where the goods are kept.