SIERRA FINANCE CORPORATION, Plaintiff-Appellant,†

v.

EXCEL LABORATORIES, LLC, (In Receivership),
Defendant-Respondent.

Court of Appeals

*No. 97–2450. Oral argument October 27, 1998.—Decided
December 22, 1998.*

(Also reported in 589 N.W.2d 432.)

†Petition to review denied.

694

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gaar W. Steiner* and *Patricia S. Matusiak*, of *Steiner & Schoenfeld*, of Milwaukee. There was oral argument by *Patricia Matusiak*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Wirth*, of *Mallery & Zimmerman*, of Milwaukee. There was oral argument by *John M. Wirth*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Sierra Finance Corporation appeals from the trial court order granting summary judgment to Excel Laboratories, LLC, and from the trial court order denying its motion for reconsideration. Sierra argues that the trial court erred in determining that it had no security interest in Excel's accounts receivable because it failed to designate the accounts as required by its security agreement with Excel. We conclude that the trial court was correct and, therefore, we affirm.

## I. BACKGROUND

On August 1, 1995, Sierra agreed to loan Excel $40,000. Excel then executed notes promising payment of principal plus accrued interest upon Sierra's demand. Excel also executed a general business security agreement for the benefit of Sierra in the amount of

the loan. The security agreement included pre-printed standard language:

> [Excel] grants [Sierra] a security interest in all accounts, contract rights, now owned or hereafter acquired by [Excel] and all proceeds and products of the foregoing ("Collateral"), wherever located, to secure all debts, obligations and liabilities . . . arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by [Sierra].

The security agreement, however, also included the following additional language further defining the collateral:

> The accounts and contract rights referred to above are those accounts receivable of [Excel] designated by [Sierra] in an amount of not less than 125% of the balance due from time-to-time under the Master Demand Note dated August 1, 1995.

A few months after the parties executed their security agreement, Excel went into receivership.

In a liquidating receivership proceeding under Chapter 128, STATS., Sierra filed a proof of claim for $41,692.08 plus interest, attorneys' fees and expenses, and ultimately brought a Motion to Apply and Compel Payment in order to enforce what it deemed to be its security interest in Excel's accounts receivable. The receiver objected. Granting the receiver summary judgment, the trial court concluded: "Sierra's security interest never attached because Excel granted only a security interest in accounts receivable that Sierra identified. Therefore, to the extent that Sierra failed to identify accounts receivable, Sierra has no security interest."

## II. ANALYSIS

The methodology and standards establishing our de novo review of a trial court's grant or denial of summary judgment have been repeated many times and need not be restated here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816, 820–21 (1987). The trial court's summary judgment resolution of this case required its determination of the meaning of the parties' security agreement, which "is effective according to its terms between the parties, against purchasers of the collateral and against creditors." *See* § 409.201, STATS. Likewise, in our *de novo* review, we must determine the meaning of the security agreement "according to its terms." *Id.*; *see also Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990) (construction of a contract presents an issue of law subject to *de novo* review).

The facts relevant to resolution of this appeal are undisputed, and resolution reduces to a single issue: whether, under the security agreement, Sierra had a security interest in Excel's accounts receivable notwithstanding the fact that the agreement provided that "those accounts receivable" be "designated by [Sierra]." We conclude that, according to the express terms of the security agreement, Sierra did not have a security interest until it "designated" specific accounts.

Section 409.203, STATS., in relevant part, provides:

**(1)** . . . [A] security interest is not enforceable against the debtor or 3rd parties with respect to the collateral and does not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains *a description of the collateral* . . .;

(b) Value has been given; and

(c) The debtor has rights in the collateral.

. . . .

**(3)** A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. *Attachment occurs as soon as all of the events specified in sub. (1) have taken place unless explicit agreement postpones the time of attaching.*

(Emphasis added.) Excel maintains that, under § 409.203(1)(a), STATS., it did not "sign[ ] a security agreement which contains a description of the collateral." Alternatively, Excel contends that even if the security agreement is read to contain an adequate description, the security interest did not attach because, under § 409.203(3), the "designated by the secured party" language of the security agreement "explicit[ly]. . .postpone[d] the time of attaching." These theories present two sides of the same flipped coin and, we conclude, whichever way the coin lands, Excel wins.

No Wisconsin decision has addressed the issue of whether, in a security agreement, certain terms "postpone[ ] the time of attaching," and only one decision has addressed the issue of whether the terms of a security agreement describe the collateral with sufficient specificity to establish a security interest. *See Milwaukee Mack Sales, Inc. v. First Nat'l Bank*, 93 Wis. 2d 589, 598, 287 N.W.2d 708, 713–14 (1980) (security agreement granting bank "a security interest in all debtor's equipment. . .whether now owned or hereafter acquired" reasonably identified after-acquired truck). Decisions from other jurisdictions, however, provide very helpful guidance. *See Miracle Feeds, Inc. v. Attica Dairy Farm*, 129 Wis. 2d 377, 384–85, 385 N.W.2d 208, 211 (Ct. App. 1986) (Dykman, J., concurring) ("[t]he

[Uniform Commercial] Code mandate of uniformity makes the decisions of other states 'more than mere persuasive authority' " on "question[s] arising under the Uniform Commercial Code," so that "we should examine other courts' decisions to be sure our result is consistent with theirs.")

■

The decisions of other jurisdictions examining whether the language of security agreements establishes or postpones attachment of a security interest provide a clear principle: where the terms of a security agreement specifically limit the collateral, or where the terms of a security agreement establish that attachment is contingent on subsequent specification of the collateral, the secured party has no security interest beyond the limitation or before the satisfaction of the contingency. *See, e.g., First Nat'l Bank v. First Sec. Bank, N. A.,* 721 P.2d 1270, 1273 (Mont. 1986) (statement of location in security agreement acts to limit the description of collateral to the property located in that designated geographic area); *In re Dolly Madison Indus., Inc.,* 351 F. Supp 1038, 1042 (E.D. Pa. 1972) (language in security agreement postponed attachment of creditor's security interest until after uncured default). In this case, we, conclude that the security agreement required that the accounts receivable be specifically "designated" by Sierra before Sierra's security interest attached.

Sierra argues that, under the pre-printed terms of the security agreement, its "security interest automatically attached at the time of execution of the security agreement because all the formal requisites for creation and attachment of a security interest" under § 409.203(1)(a), (b), and (c), STATS., had been satisfied, and "at that time there was no explicit agreement

between Sierra and Excel to postpone attachment of the security interest. . .and the language description of the collateral in the security agreement had no effect on the timing of attachment." Excel concedes that "[i]f Sierra had simply left the preprinted language of the Security Agreement alone, it would have had. . .a floating lien on after-acquired property," thus establishing Sierra's security interest. Excel argues, however, that, "[i]nstead, Sierra altered that language and limited itself to a floating lien" on specifically "designated" accounts.

Excel is correct. As the receiver maintained and the trial court agreed, the security agreement's "designated by the secured party" language established that Sierra's specification of accounts receivable was necessary—regardless of whether one views that as a requirement for an adequate description of the collateral, or as a postponement of the attachment. As Excel argues:

> If the language is not read to mean that Sierra only has an interest in identified accounts receivable, what does it mean? If it means that Sierra has an interest in all accounts receivable, the "designated by the secured party" language is meaningless. In fact, the entire additional provision added by Sierra would be superfluous.[1]

---

[1] Additionally, Excel persuasively points out:

To illustrate the full import of giving effect to the actual language of the Security Agreement, assume that it stated:

The accounts and contract rights referred to above are those accounts receivable of debtor with a principal balance in excess of $50,000.

Only the underlined language differs from the actual language in the Security Agreement. Further assume that none of Excel's accounts receivable exceeded $50,000. No one could argue in good

Although Sierra contends that "[t]he additional language merely provides a means. . .to monitor its collateral or to establish an orderly procedure for enforcement of its security interest upon default," Excel reasonably inquires why that would be necessary (not to mention, how that would take place) given the receiver's and trial court's responsibility for such monitoring and enforcement. And while Sierra contends that Excel's interpretation would make "no business sense," Excel reasonably responds that "it is not a stretch to assume that the [additional] language may have been a poor attempt to enable a third-party loan against receivables that had not been designated and that did not exceed [in total] 125% of the purported obligations."[2]

---

faith that Sierra had an interest in a $10,000 receivable. Why should the language "designated by the secured party" have any less meaning than "with a principal balance in excess of $50,000"?

[2] Excel additionally argues that the parties' financing statement supports its position. The financing statement describes the collateral as:

Accounts receivable of debtor in an amount of not less that 125% of balance due from time-to-time under Master Demand Note dated August 1, 1995, *with the particular accounts receivable to be identified by the secured party*.

(Emphasis added.) The trial court agreed, concluding "that the collateral description in the. . .financing statement is inadequate" because it "failed to identify the collateral" by adequately indicating the type or describing the items to be attached.

Clearly, the terms of the financing statement—"with the particular accounts receivable to be identified by the secured party"—could be read to explicitly confirm the parties' agreement that Sierra's security interest was not established until Sierra specifically designated Excel's accounts receivable. At oral argument, however, the parties acknowledged that the security agreement, not the financing statement, is the docu-

701

Sierra also contends that even if the security agreement required it to designate the accounts receivable in order to establish its security interest, the security agreement did not require it to make that designation before Excel went into receivership. Instead, Sierra maintains, "The word 'designated'. . .does not mean or read that accounts have already been or need to be 'designated' but rather, that accounts may be 'designated' 'from time to time' according to the balance due on the loan." We are not persuaded. Under both a reasonable and strictly grammatical reading of the security agreement, "from time-to-time" is an adverbial phrase modifying "the balance due," not the "accounts. . .designated."

██

Accordingly, we conclude that the additional language of the security agreement, requiring Sierra to "designate[ ]" specific accounts receivable, precluded the existence of a security interest under § 409.203(1)(a), STATS., and postponed the attachment

---

ment governing the determination of the existence of a security interest. Generally, a security agreement governs the rights of the parties to the agreement; a financing statement governs the rights of third parties. *See Milwaukee Mack Sales, Inc. v. First Wis. Nat'l Bank*, 93 Wis. 2d 589, 596, 287 N.W.2d 708, 713 (1980). Thus, the two documents serve related but distinct purposes, *see id.*, and "[t]he description in the financing statement can neither reduce nor enlarge the security interest actually created by the parties [in the security agreement]." *Allis-Chalmers Corp. v. Staggs*, 453 N.E.2d 145, 149 (Ill. App. Ct. 1983); *see also Levitz Ins. Agency v. Arons Arcadia Ins. Agency*, 152 B.R. 693, 697 (Bankr. D. Mass. 1992).

Thus, we base our decision in this case on the security agreement, not the financing statement. Still, we additionally note that, in this case, reference to the even more explicit terms of the financing statement would support Excel's position.

of a security interest under § 409.203(3). Because Sierra failed to designate the accounts,[3] the trial court correctly concluded that Sierra had failed to establish its security interest, and that summary judgment for Excel was appropriate.[4]

*By the Court.*—Orders affirmed.

[3] Sierra does not dispute Excel's assertions: "To date, Sierra has not alleged that it ever designated any receivables. If the lien did not attach before these proceedings, the Receiver stands ahead of Sierra."

[4] Resolving the appeal on this basis obviates the need to address Sierra's several other arguments. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).