UNITED STATES of America, Appellant,

v.

FIRST NATIONAL BANK IN OGAL-LALA, NEBRASKA, Appellee.

No. 72–1208.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 5, 1972.

Decided Jan. 4, 1973.

Eloise Davies, Atty., Dept. of Justice, Washington, D. C., for appellant.

David A. Johnson, Omaha, Neb., for appellee.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

MATTHES, Chief Judge.

The question presented for decision in this case is whether the description of collateral in the controverted security agreement is adequate under §§ 9–110 and 9–203(1)(b) of the Uniform Commercial Code [U.C.C.] to create a security interest in certain property. We answer that question in the affirmative and therefore reverse the judgment of the District Court.

The situation generating this litigation can be briefly described. On January 13, 1964, a Mr. and Mrs. Contryman obtained through the Farmers Home Administration [F.H.A.] a loan from the United States in the amount of $35,000.00. In September of 1965, the U.C.C. became effective in Nebraska, the situs of the Contrymans' farm, and the Contrymans, at the request of the government, executed a new security agreement in order to secure the unpaid balance on the loan in compliance with the U.C.C. This agreement described the collateral, insofar as is pertinent here, as:

> "All farm and other equipment (except hand tools and horse-drawn and hand equipment) now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following. . . ."

Certain items of equipment were then enumerated, including pipe and a pump with motor. This security agreement was filed on April 7, 1967. Thereafter, the Contrymans acquired certain devices which together formed farm irrigation equipment. This equipment was attached to the well on the farm described in the aforementioned agreement.

On April 25, 1968, the Contrymans conveyed this farm to the defendant bank in satisfaction of debts. The bank then refused to allow the F.H.A. to take the farm irrigation equipment in partial satisfaction of the Contrymans' debt to the F.H.A. and in June of 1970 the bank sold the farm without accounting to the United States for the value of the irrigation equipment. This suit by the United States for the value of the equipment ($1,862.00), alleging conversion of it, followed.[1]

---

1. The defendant bank counterclaimed against the United States for the value of the premium the bank paid on hail insurance on the Contrymans' crops in a

The District Court rendered judgment for the defendant bank, holding the United States had no security interest in the irrigation equipment because the aforementioned description of collateral was insufficiently specific to satisfy U.C.C. §§ 9–110 and 9–203(1)(b).[2] This appeal followed.

■■■■■ The statute applicable to this controversy is Vol. 6 § 9–203 Neb.Rev.Stat.,[3] which provides in pertinent part:

"(1) . . . a security interest is not enforceable against the debtor or third parties unless

(a) . . .

(b) the debtor has signed a security agreement which contains a description of the collateral. . . ."

The Official Comment to § 9–203 states in pertinent part:

"Here as elsewhere in this article, . . . formal requisites are reduced to a minimum. . . . The only requirements . . . are . . . (c) a description of the collateral *or kinds of collateral.* As to the type of description which will satisfy the requirements of this section,

see section 9–110 and comment thereto." (emphasis supplied) (parenthetical reference deleted).

Section 9–110 and its comment state:

9–110. Sufficiency of description.

"For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

Comment.

"The requirement of description of collateral is evidentiary. The test of sufficiency of a description laid down by this section is that the description do the job assigned to it—that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature. . . ." (parenthetical reference omitted.)

The question for decision is whether the description of collateral set out above satisfies these statutory provi-

---

prior year, and the U. S. then brought a third party complaint against the Contrymans for indemnification should the bank succeed on its counterclaim. Judge Urbom rendered judgment for the plaintiff United States on the counterclaim and therefore for the third party defendants. No appeal has been taken from these judgments.

2. Judge Urbom initially held for the defendants saying (1) the pre-Code security agreement was invalid under pre-Code Nebraska law as to the irrigation equipment because pre-Code Nebraska law did not recognize security interests in after-acquired property, and (2) the second, post-Code, security agreement was void for want of consideration. However, upon the government's motion for modification of judgment, Judge Urbom held that Nebraska law *did* recognize a pre-existing debt as consideration and therefore held the post-Code security agreement valid. However, as indicated in the text, he declined to modify the judgment for the defendant bank.

3. We note that jurisdiction in this case is predicated upon 28 U.S.C. § 1345 because

this is an action commenced by the United States. Therefore, the rule of Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requiring adherence to the substantive law of the appropriate state, is inapplicable. Federal, not state, law ordinarily governs such cases. Tri-State Ins. Co. v. United States, 340 F.2d 542, 544 (8th Cir. 1965). However, where the matter in controversy concerns ownership rights in property, *cf.* United States v. Williams, 441 F.2d 637, 643 (5th Cir. 1971), and especially where the applicable state law would be the U.C.C., which actually is national law, *cf.* In re Yale Express System, Inc., 370 F.2d 433, 437 (2nd Cir. 1966), the federal court will be guided, if not governed, by the appropriate state law in determining federal law. Indeed, in the present case there is no conflict between the two. The federal standards would be the basic draft of the U.C.C. and the Nebraska statutes are the pertinent parts of the Official Draft of the U.C.C. with no statutory variations or construing caselaw. There is, therefore, no choice of law necessary. Hence we apply the relevant Nebraska statutes.

sions. In urging a negative answer to that question, the defendant bank, as did the District Court, relies almost entirely upon a decision which had been criticized by two commentators on the subject,[4] Mammoth Cave Production Credit Assoc. v. York, 429 S.W.2d 26 (Ky.1968). In that case the security agreement and financing statement described the collateral as "All farm equipment" presently owned or thereafter acquired. The Kentucky Court held this description inadequate to encompass an after-acquired tractor, saying

> "The description in the security agreement, 'All farm equipment' . . . seems so vague and indefinite that it is doubtful that 'it reasonably identifies what is described.' It could include anything from a screw driver or garden hoe to the largest machinery. In light of this vague provision it seems doubtful that it was really agreed that tractors and other large farm equipment were to be security for the loan. This seems more like a provision inserted by an over-anxious lending officer to encompass as much security as possible, rather than an actual agreement that a security interest was to attach on all farm equipment."

429 S.W.2d at 29. *See also* In re Lehner, 303 F.Supp. 317 (D.Colo.1969), aff'd, 427 F.2d 357 (10th Cir. 1970) (all consumer goods); In re Fuqua, 330 F. Supp. 1050 (D.Kan.1971), aff'd, 461 F. 2d 1186 (10th Cir. 1972) (all personal property).

■ However, we are not convinced that the requirement in Section 9–203, *supra*, that the collateral be described, is a device for minimizing the amount of collateral a creditor can secure. That may be a laudable goal, but it is not encompassed by § 9–110. As the Comment to that section makes clear, the purpose of a description of collateral in a security agreement is only to evidence the agreement of the parties and therefore it need only "make possible the identification of the thing described." Comment, § 9–110 Neb.Rev.Stat. For example, in James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis, 292 Minn. 277, 194 N.W.2d 775 (1972), a case in which the Permanent Editorial Board for the U.C.C. appeared as amicus curiae, the collateral was described as

> "all goods (as defined in Article 9 of the Uniform Commercial Code) whether now owned or hereafter acquired."

194 N.W.2d at 778. The Minnesota Court held the description adequate under § 9–110, saying:

> "If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. . . .
>
> The description of the collateral [here] . . . did what it was meant to do—namely it included all of the goods then owned, or to be owned in the future, by the debtor. . . . The parties sought to create a security interest in substantially all of the debtor's property. That is what was stated and that is what was meant. The parties did not particularize any further, and the statute does not require it."

*Id.* at 782. *See also* In re Varney Wood Products, Inc., 458 F.2d 435 (4th Cir. 1972) (all accounts receivable); United States v. Antenna Systems, Inc., 251 F. Supp. 1013 (D.N.H.1966) (all furniture, fixtures and equipment); National Cash Register Co. v. Firestone & Co., Inc., 346 Mass. 255, 191 N.E.2d 471 (1963) (all goodwill, fixtures, equipment and merchandise).

In sum, we think the quoted description of collateral in the security agreement *sub judice* "makes possible the identification of" the after-acquired water irrigation equipment as collateral in

---

4. *See* Note, Agricultural Financing Under the U.C.C., 12 Ariz.L.Rev. 391, 394 (1970); Note, Description of Collateral in a Financing Statement: Should It Be Required? 4 Valparaiso U.L.Rev. 205, 216 (1969).

which the United States has a secured interest. That is all that is required. Accordingly, the judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.