**WORLD WIDE TRACERS, INC., petitioner, Appellant,**

v.

**METROPOLITAN PROTECTION, INC., formerly Protection Technologies, Inc., Defendant,**

**Metropolitan State Bank, John Hole, et al., Respondents.**

No. C6–85–443.

Supreme Court of Minnesota.

April 4, 1986.

Terence P. Durkin, Minneapolis, for appellant.

Jim Lamphere, Bloomington, for Metropolitan State Bank.

Robert M. Smith, Minneapolis, for John & Gloria Hole, Raymond Lundgren.

AMDAHL, Chief Justice.

This case arises from an action brought by appellant, World Wide Tracers, Inc., against respondent, Metropolitan State Bank (bank), Metropolitan Protection, Inc. (debtor), and three guarantors of debtor, to enforce its rights under a security agreement with debtor. The trial court granted bank's motion for summary judgment, declaring that the descriptions of collateral in appellant's security agreement and in the accompanying financing statement were insufficient as a matter of law to perfect appellant's security interest in debtor's accounts receivable. The court of appeals affirmed the trial court, 373 N.W.2d 839. We affirm.

The facts in this case are not in dispute. On July 15, 1980, appellant sold to debtor certain of its assets and properties, including equipment, furniture, uniforms, accounts receivable, and contract rights. To secure payment of the purchase price, debtor executed a security agreement and financing statement in favor of appellant. The financing statement was filed with the Minnesota Secretary of State on July 16, 1980.

Both the security agreement and the financing statement contained the following language describing the collateral:

> All of the property listed on Exhibit "A" attached hereto and made a part hereof, together with any property of the debtor acquired after July 15, 1980.

Both documents had the same Exhibit "A" attached. Exhibit "A" is a list of equipment, furniture, and fixtures owned by appellant and sold to debtor. Exhibit "A" does not include any accounts receivable or contract rights.

In February 1982, bank loaned monies to debtor, for which debtor executed two security agreements containing the following language:

> All accounts of borrower now existing or hereafter at any time acquired, and all contract rights of borrower now existing or hereafter at any time arising.

All equipment now owned or hereafter acquired, including, but not limited to, office furniture and uniforms.

Debtor also executed a financing statement containing the following language to describe the collateral:

All accounts receivable and contract rights owned or hereafter acquired.

All equipment now owned or hereafter acquired, including but not limited to, office furniture and uniforms.

The financing statement was filed with the secretary of state's office on March 3, 1982.

When debtor defaulted on its agreement with appellant in fall 1982, appellant brought suit against debtor, guarantors of debtor's obligations, and bank, asserting the priority of its alleged security interest in the debtor's accounts receivable. Bank answered and counterclaimed, asserting its perfected security interest in debtor's accounts receivable. Debtor filed a petition in bankruptcy, and the bankruptcy trustee disclaimed any interest in and to the accounts receivable.

This appeal presents the following issues:

1. How strictly should the Uniform Commercial Code (UCC) requirements regarding the sufficiency of descriptions of collateral in security agreements and financing statements be applied?

2. Is the description of collateral as "all of the property listed on Exhibit 'A' and made a part hereof, together with any property the debtor acquired after July 15, 1980," a sufficient description of the collateral to perfect appellant's security interest in debtor's accounts receivable acquired after July 15, 1980?

1. Under Minnesota's version of the UCC, Minn.Stat. ch. 336 (1984), to perfect a security interest in an item of property, the creditor must have possession of the item, or there must be a signed security agreement between the creditor and the debtor. Minn.Stat. § 336.9–203(1)(a) (1984). Additionally, to perfect a security interest in most types of collateral, a financing statement must be filed with the appropriate state or county office. Minn.Stat. §§ 336.-9–302, 336.9–401 (1984).

Article 9 of chapter 336 requires both the financing statement and the security agreement to contain an identification of the property to be secured. See Minn.Stat. §§ 336.9–203(1)(a), 336.9–402(1). Regarding a security agreement, Minn.Stat. § 336.9–203 requires the agreement to contain "a description of the collateral." With respect to a financing statement, Minn. Stat. § 336.9–402(1) requires "a statement indicating the types or describing the items, of collateral." To perfect a security interest, both the description in the security agreement and the description in the financing statement must be "sufficient." The sufficiency of a description is governed by Minn.Stat. § 336.9–110 (1984), which states that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

There is a split of authority regarding the analysis and application of the UCC collateral description requirements. Some courts have read the language of these UCC provisions narrowly and strictly. See, e.g., In re Sarex Corp., 509 F.2d 689 (2d Cir.1975); In re Middle Atlantic Stud Welding Co., 503 F.2d 1133 (3d Cir.1974); Mammoth Cave Production Credit Association v. York, 429 S.W.2d 26 (Ky.1968). These courts have been unwilling to accept broad descriptions of collateral in financing statements and security agreements. Under the view adopted by these courts the description "any property" would be clearly insufficient.

Other courts, probably a majority, adopt a more liberal view. See, e.g., United States v. First National Bank, 470 F.2d 944 (8th Cir.1973); Credit Alliance Corp. v. Trigg, 41 U.C.C.Rep.Serv. (Callaghan) 208 (S.D.Miss.1985); In re Sunberg, 35 B.R. 777 (S.D.Iowa 1983); Bankers Trust Co. v. Zecher, 103 Misc.2d 777, 426 N.Y. S.2d 960 (N.Y.Sup.Ct.1980); Klingner v.

*Pocono International Raceway, Inc.,* 289 Pa.Super. 484, 433 A.2d 1357 (1981); *Milwaukee Mack Sales, Inc. v. First Wisconsin National Bank,* 93 Wis.2d 589, 287 N.W.2d 708 (1980). The court in *Klingner* explained this view by stating: "The Code is meant to be comprehensive and flexible, and to free the law from artificial distinctions restricting the rational conduct of commercial financing." 289 Pa.Super. at 489, 433 A.2d at 1360.

Under this view, broad descriptions of collateral in security agreements have been held sufficient so long as it was possible to "reasonably identify" the items subject to the security interests. The court in *First National Bank* stated:

> [W]e are not convinced that the requirement in Section 9–203 * * * that the collateral be described, is a device for minimizing the amount of collateral a creditor can secure. That may be a laudable goal, but it is not encompassed by § 9–110. * * * [T]he purpose of a description of collateral in a security agreement is only to evidence the agreement of the parties and therefore it need only "make possible the identification of the thing described."

470 F.2d at 947. In *First National Bank,* the court held that the description in the security agreement as "all farm and other equipment" was adequate to perfect a security interest in the debtor's after-acquired irrigation equipment. *Id.* at 947–48. Similarly, in *Milwaukee Mack Sales,* the Wisconsin Supreme Court held that the description "all debtor's equipment" sufficed to perfect a security interest in the debtor's trucks. 93 Wis.2d at 599, 287 N.W.2d at 714. A Pennsylvania appellate court permitted an even broader description by holding in *Klingner* that the language "all of Borrower's personal property and fixtures" created a security interest in "tickets and their proceeds." 289 Pa.Super. at 492, 433 A.2d at 1361. Finally, in *Leasing Service Corp. v. American National Bank & Trust Co.,* 19 U.C.C.Rep.Serv. (Callaghan) 252, 263 (D.N.J.1976), a federal district court allowed the very broad description in a security agreement of "any and all property wherever located" to create a security interest in all of the debtor's property. *See also In re JCM Cooperative, Inc.,* 8 U.C.C. Rep.Serv. (Callaghan) 247 (Bankr.W.D. Mich.1970) (description of collateral as "the proceeds and products [thereof] of all other equipment—including but not limited to—all tangible personal property now owned by the debtor" sufficiently described accounts receivable funds resulting from proceeds or products of the debtor's tangible property).

Courts adopting this broad view of the UCC collateral description requirements have generally demanded even less detail and specificity for descriptions in financing statements. *See, e.g., Thorp Commercial Corp. v. Northgate Industries, Inc.,* 654 F.2d 1245 (8th Cir.1981) ("assignment accounts receivable" perfected a security interest of all the debtor's accounts receivable); *In re F.R. of North Dakota, Inc.,* 41 U.C.C.Rep.Serv. (Callaghan) 265 (Bankr.D. N.D.1985) ("all furniture, fixtures, and small wares" was a sufficient description of the debtor's assets for the financing statement, but not for the security agreement); *In re Mitchell Bros. Construction, Inc.,* 41 U.C.C.Rep.Serv. (Callaghan) 1124 (Bankr.W.D.Wis.1985) ("super-generic" descriptions which do not indicate the types or describe the items of collateral are sufficient in financing statements where the intent is to indicate a blanket lien on all the debtor's assets); *Bankers Trust Co. v. Zecher,* 103 Misc.2d 777, 426 N.Y.S.2d 960 ("all present and hereafter acquired equipment wherever located" was a sufficient description in financing statement to perfect a security interest in the debtor's restaurant equipment). The bankruptcy court in *In re F.R.* explained this difference in treatment of descriptions in security agreements and financing statements:

> [A] financing statement has as its purpose only to reasonably [identify] the nature of the secured collateral such that a third party might be placed on notice or such that it would be reasonable for a third party to make further inquiry. Liberality in defining language is permissi-

ble in a financing statement if that language does not mislead and at least suggests that further inquiry is appropriate. With regard to the financing statements, the inquiry must be whether the information thereon suggests the existence of additional security leading one to inquire further. The same degree of flexibility as to language is not accorded to the security agreement itself. The security agreement embodies the intention of the parties and is the primary source to which a creditor must direct his inquiry regarding the true nature of the security interest intended. A security interest is defined by the description contained in the security agreement.

41 U.C.C.Rep.Serv. at 271 (citations omitted). The basis for the distinction is found in the language of UCC § 9–402(1) that permits a description in a financing statement to be sufficient if it merely indicates the "type" of collateral secured rather than describes each item individually.

In *James Talcott, Inc. v. Franklin National Bank*, 292 Minn. 277, 194 N.W.2d 775 (1972), the sole case in which we have considered this issue, we adopted a broad view of the collateral description requirements of Minn.Stat. §§ 336.9–203(1)(a) and 336.9–110 and held that the description of collateral in a security agreement as "all goods (as defined in Article 9 of the Uniform Commercial Code) whether now owned or hereafter acquired" was sufficient to perfect a security interest in the debtor's after-acquired motor vehicles and construction equipment. We stated:

The description of the collateral in the extension agreement did what it was meant to do—namely, it included all of the goods then owned, or to be owned in the future, by the debtor. * * * The parties sought to create a security interest in substantially all of the debtor's property. That is what was stated and that is what was meant. The parties did

not particularize any further, and the statute does not require it.

*Id.* at 287, 194 N.W.2d at 782. Although we have adopted the broad view with respect to collateral descriptions in security agreements, we have never had occasion to interpret the requirements for collateral descriptions in financing statements.[1]

The Eighth Circuit, in construing Minnesota law, adopted the liberal view that collateral descriptions in financing statements are sufficient if they would put a subsequent creditor on inquiry notice regarding the type of property at issue. The court has stated:

Because the purpose of the financing statement is to warn subsequent creditors rather than to identify the collateral, the UCC makes clear that the collateral need not be specified in the financing statement but may be described by "type." * * *

\* \* \* \* \* \*

* * * [T]he UCC requires a description of only the *type* of collateral, not the collateral itself, in the financing statement to perfect a security interest. Under § 336.9–110, a description of the collateral in a financing statement "is sufficient whether or not it is specific if it reasonably identifies" the *type* of collateral. The drafters of the UCC contemplated that the financing statement would need to give only enough description of the collateral to induce a subsequent creditor to make further inquiries.

*Thorp Commercial Corp.*, 654 F.2d at 1249 (emphasis supplied).

Commentators on the UCC seem to agree that this is the better view. They are critical of cases requiring precise legal descriptions and argue that a description in a financing statement is sufficient if it would put a third party on notice. *See* 8 R. Anderson, Uniform Commercial Code § 9–

---

1. In a footnote in *Talcott*, we indicated that although a broad description of collateral sufficed in a security agreement, more restrictive language might be required in a financing statement. *See Talcott*, 292 Minn. at 287, n. 3, 194 N.W.2d at 782 n. 3. This statement, however, was *dicta* because the description in the financing statement in *Talcott* was much more specific than that in the security agreement.

110:6 (3d ed. 1985); J. White & R. Summers, Uniform Commercial Code § 23–3, at 910–11 (2d ed. 1980); Note, *Commercial Transactions: The Adequacy of the Descriptions of Collateral in Uniform Commercial Code Financing Statements and Security Agreements*, 27 Okla.L.Rev. 469 (1974) ("A description which requires a reasonable amount of inquiry is proper"). According to one commentator:

> [B]ecause the financing statement simply gives notice to the world * * * a too-broad notice is, if anything, beneficial to third parties because it gives them warning to stay away. * * *
>
> * * * [I]f the result of finding a financing statement invalid because of a technical mistake is simply to benefit third parties who have in no way been misled—and they are not likely to have been misled to their detriment in extending credit by a too-broad description of collateral—then the result is plainly wrong and clearly unjust.

R. Henson, Secured Transactions § 4–7, at 75 (1979). In the view of these commentators, a functional approach to applying the requirements of UCC § 9–402(1) is best, with emphasis on the practical effect of the description rather than on whether it literally complies with section 9–402. *See* Comment, *Secured Transactions—The Use of Generic Classifications as Descriptions of Collateral in Security Agreements and Financing Statements Under Article Nine of the Uniform Commercial Code*, 19 N.Y.L.F. 365, 371 (1973).

The language of the UCC and the official comments support a liberal interpretation of the collateral description requirements for financing statements and indicate that less specificity is required of descriptions in financing statements than in security agreements. While section 336.9–203(1)(a) requires a description of the collateral in the security agreement, section 336.9–402(1) permits either a description of the items of collateral *or* an indication of the "types" of collateral in the financing statement. Also, Minn.Stat. § 336.9–402(8) (1984) permits a financing statement to be effective "even though it contains minor errors which are not seriously misleading." Section 336.9–203 contains no such provision for security agreements.

■ The official comment to UCC § 9–402 indicates that the section adopts a system of "notice filing" in which the financing statement serves as "only a simple notice." UCC § 9–402, comment 2. "The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." *Id.* The provisions of Article 9 and the official comments thereto support the conclusion that the security agreement embodies the actual agreement between the debtor and the secured party, and the financing statement need only provide inquiry notice to prospective creditors. Accordingly, we conclude that the collateral description requirements for financing statements set forth in Minn.Stat. § 336.9–402(1) should be liberally construed and applied. A collateral description in a financing statement should be held adequate to perfect a security interest in an item of property if the description reasonably provides prospective creditors with inquiry notice regarding the type of property at issue.

■ 2. Having concluded that the collateral description requirements of Article 9 should be liberally construed with respect to both security agreements and financing statements, we now consider the adequacy of the collateral description in appellant's documents to perfect a security interest in debtor's accounts receivable. In doing so, we need only consider the sufficiency of the description in the security agreement because the descriptions are identical in both documents. Since less specificity is required of descriptions in financing statements, in cases where the descriptions in the financing statement and the security agreement are identical, the collateral description requirements for security agreements will be dispositive.

As discussed above, under *Talcott*, broad descriptions are allowed in security agreements. Although the collateral description in *Talcott* was not as broad as that in appellant's documents, cases in other jurisdictions have approved such broad language in security agreements. *See Leasing Service Corp.*, 19 U.C.C.Rep.Serv. 252 ("any and all property wherever located"); *In re JCM*, 8 U.C.C.Rep.Serv. 247 ("all tangible personal property"); *Klingner*, 289 Pa.Super. 484, 433 A.2d 1357 ("all of Borrower's personal property and fixtures").

Appellant claims that the language "any property of the debtor acquired after July 15, 1980" accurately conveys the intent of the parties to encumber all of debtor's after-acquired assets. We have specifically acknowledged that such attempts to create blanket liens on a debtor's assets are permissible under Minnesota law. "If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not." *Talcott*, 292 Minn. at 287, 194 N.W.2d at 782. In *Talcott*, we held:

> [T]he policy of Art. 9 is to uphold security agreements according to their terms. * * * A security agreement should not be held unenforceable unless it is so ambiguous that its meaning cannot reasonably be construed from the language of the agreement itself.

*Id.* at 288, 194 N.W.2d at 782. However, we will not enforce security agreements where such a broad description of the collateral is misleading or ambiguous.

In the security agreement here, the word "property" is used twice to describe collateral—first in reference to the assets listed on the attached Exhibit "A"; second in reference to after-acquired assets. The word is otherwise undefined. The only guidance one receives in the security agreement as to the meaning of "property" comes from assets listed on Exhibit "A," all of which are tangible personal property. When read in conjunction with Exhibit "A," the word "property" reasonably can be taken to mean only tangible property. At a minimum, the meaning is ambiguous.

Ambiguity and the likelihood of confusion is enhanced by other language in the security agreement. In addition to the language in the collateral description, the agreement contains another after-acquired property clause that grants a security interest in "all increases, parts, fittings, accessories, equipment, renewals and replacements of all or any part thereof, and other goods *of the same class* whether now owned or hereafter acquired by Debtor." (emphasis added). This language raises the question whether only after-acquired property "of the same class" is to be encumbered. If so, no security interest in the accounts receivable is created.

Appellant argues that the intent of the parties as expressed in the security agreement is clear and unambiguous; if it had meant to encumber only tangible property it would not have said "any property." The clear intent of the parties is called into question, however, by the fact that debtor informed bank at the time it acquired the loan that its accounts receivable were unencumbered. Also, if appellant had intended to encumber more than just tangible property, it could have so stated by using the description "any property, tangible or intangible." Where there is an ambiguity in a contract, the contract will be construed against the drafter. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 89 (Minn.1979).

Appellant also argues that the description should not be held inadequate so long as it provides inquiry notice to prospective creditors. Notice, however, is at issue only with respect to financing statements, not security agreements.

Although the description "any property of the debtor" in the security agreement might be sufficient in some circumstances, we conclude that here the description, when read in conjunction with the attached list of tangible assets, is too ambiguous and misleading to create a security interest in debtor's accounts receivable.

Affirmed.