**PRODUCTION CREDIT ASSOCIATION OF WEST CENTRAL MINNESOTA,** formerly Production Credit Association of Alexandria, Appellant,

v.

Anthony C. BARTOS, et al.,
Respondents,

Lowry State Bank, Lowry, Minnesota,
third-party Plaintiff, Respondent.

No. C1–88–719.

Court of Appeals of Minnesota.

Oct. 11, 1988.

Gary I. Syverson, Swenson, Grover, Lervick, Syverson & Battey, Ltd., Alexandria, for appellant.

Robert V. Maki, Alexandria, for Bartos, et al.

Scott T. Johnston, Alexandria, Robert J. Walter, Krass & Monroe, Shakopee, for Lowry State Bank.

Considered and decided by FOLEY, P.J., and CRIPPEN and SHORT, JJ., without oral argument.

## OPINION

SHORT, Judge.

Appellant Production Credit Association of West Central Minnesota (PCA) and respondent Lowry State Bank (Lowry) both claim to have security interests in a backhoe and trailer owned by respondents Anthony and Anita Bartos (Bartos). The trial court ruled that Lowry has a perfected security interest in the backhoe and trailer, and that PCA does not. We disagree and reverse.

## FACTS

On April 21, 1980, PCA loaned Bartos $52,633.10. To secure the loan, Bartos and PCA entered into a security agreement giving PCA a security interest in the following property, "whether now owned or hereafter acquired":

All equipment, motor vehicles and fixtures, all accessions thereto, and all spare parts and special tools for such equipment.

All livestock and poultry and the young of such livestock and poultry.

The following products of livestock and poultry: Milk.

All accounts arising from the sale, lease or other disposition of other Collateral * * *.

All crops growing or to be grown by Debtor, and the products of all such crops * * *.

All harvested and processed crops not covered under other sections of this Agreement (whether or not produced by Debtor); feed; seed; fertilizer, insecticides, herbicides and other agricultural chemicals; and other supplies.

PCA filed a financing statement with the Pope County Recorder's Office on April 25, 1980, covering:

All farm machinery, equipment, supplies, feed and livestock now owned or hereafter acquired.

PCA filed a continuation of this financing statement with the Pope County Recorder on March 13, 1985.

In July 1981, Lowry State Bank made a loan to Bartos, and obtained a security interest in a backhoe and a tractor. Lowry filed a financing statement at the Pope County Recorder's Office on July 6, 1981, covering:

1969 Drott Back Hoe on Tracks S# 50EC140

1968 1030 Case Diesel Tractor

On February 27, 1984, Lowry loaned Anthony Bartos money to buy a Lo–Boy trailer, and entered into a security agreement giving Lowry a security interest in the trailer. However, Lowry did not file a financing statement covering the trailer until after this action was commenced.

On April 2, 1987, after Bartos defaulted on their loan payments, PCA began a replevin action to take possession of its collateral, including the backhoe and the Lo-Boy trailer. After a hearing on April 23, 1987, the trial court entered an order for seizure giving PCA immediate possession of the collateral.

Bartos refused to comply with the seizure order. On August 25, 1987, PCA

brought a motion to hold Bartos in contempt. At that time, it was discovered that Lowry might have a competing security interest in the backhoe and trailer. The trial court ordered Bartos to turn the backhoe and trailer over to the Pope County Sheriff, pending a determination of which security interest had priority. PCA stipulated that Lowry should be made a party to the proceedings.

On September 22, 1987, Lowry filed a financing statement at the Minnesota Secretary of State's Office, covering:

1962 3–axle lo-boy trailer

1969 Drott Backhoe, on tracks, S# 50EC140

1968 1030 Case Diesel Tractor

After a court trial on September 24, 1987, the trial court ruled that PCA had not perfected a security interest in the backhoe and trailer. The court interpreted PCA's financing statements to cover only farm equipment, "not equipment used in nonfarm business." The trial court found that Bartos used the backhoe and trailer for "nonfarm business" and that they were outside of the scope of PCA's financing statement. The trial court found that Lowry had perfected a security interest in the trailer and backhoe when it filed its financing statement with the Secretary of State.

PCA argues on appeal that it perfected a security interest in the backhoe and trailer in 1980 when it filed its financing statement with the Pope County Recorder, and that its security interest has priority over Lowry's. PCA contends that the description of collateral in the financing statement is sufficiently broad to put future creditors on notice that it had a security interest in the backhoe and trailer.

## ISSUES

1. Was the description of collateral in PCA's 1980 financing statement sufficient to perfect a security interest in the backhoe and trailer?

2. Did PCA properly perfect a security interest in the backhoe and trailer by filing a financing statement with the Pope County Recorder rather than the Minnesota Secretary of State?

3. Does PCA's security interest in the backhoe and trailer have priority over Lowry's security interest?

## ANALYSIS

The trial court's ruling is based on its interpretation of the security agreements and financing statements at issue. This court is entitled to make its own analysis of the documentary evidence, and need not defer to the trial court's findings. *See In re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225, 243 N.W.2d 302, 305 (Minn.), *cert. denied* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

### I.

The first issue presented is whether the description of collateral in PCA's 1980 financing statement was sufficient to perfect a security interest in the backhoe and trailer. A security interest "attaches" when the debtor signs a valid security agreement which covers the collateral. *See* Minn.Stat. § 336.9–203(1)(a) (1986). A security interest is generally "perfected" by filing a financing statement including a description of the collateral. *See* Minn.Stat. § 336.9–302(1) (1986). A security interest cannot be perfected unless both the security agreement and the financing statement contain an adequate description of the collateral subject to the interest. *World Wide Tracers, Inc. v. Metropolitan Protection, Inc.,* 384 N.W.2d 442, 447 (Minn.1986).

Minn.Stat. § 336.9–110 (1986) provides generally that a "description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Case law makes clear that this "reasonable identification" standard is applied more strictly to collateral descriptions in security agreements than it is to collateral descriptions in financing statements. This is because the purpose of a description in a financing statement is different from the purpose of the description of collateral in a security agreement.

The description in a security agreement must be sufficiently specific for the parties to identify the collateral subject to the agreement. *See James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 292 Minn. 277, 286–87, 194 N.W.2d 775, 782 (Minn.1972). "The principal function of a description of the collateral in a security agreement is to enable the parties themselves or their successors in interest to identify it, particularly if the secured party has to repossess the collateral or reclaim it in a legal proceeding." *Id.* 194 N.W.2d at 782.[1]

In contrast, the financing statement serves the purpose of putting nonparties such as other subsequent creditors on notice that the debtor's property is encumbered. "The description of collateral in the financing statement does not function to identify the collateral and define property which the creditor may claim, but rather to warn other subsequent creditors of the prior interest." *Thorp Commercial Corp. v. Northgate Industries, Inc.*, 654 F.2d 1245, 1248 (8th Cir.1981) (applying Minnesota law).

■ Since the financing statement is designed only to provide general notice or warning that certain collateral might already be encumbered, the statement need only describe the *type* of collateral in which the creditor claims an interest. *See* Minn. Stat. § 336.9–402(1) (1986); *World Wide Tracers*, 384 N.W.2d at 447; *Thorp Commercial Corp.*, 654 F.2d at 1249. Subsequent creditors are expected to make their own inquiry to determine whether specific items of collateral are already subject to a prior security interest. *See* Minn.Stat.Ann. § 336.9–402, U.C.C. Comment 2 (1966); *World Wide Tracers*, 384 N.W.2d at 447; *James Talcott, Inc.*, 292 Minn. at 290, 194 N.W.2d at 783. Thus, a financing statement is adequate to perfect a security interest if it "reasonably identifies" the type of collateral in a way that would "reason-

ably induce" subsequent creditors to investigate further. *Thorp Commercial Corp.*, 654 F.2d at 1249–1250. A trial court evaluating the sufficiency of a collateral description in a financing statement should focus on whether the description was adequate enough "so that a subsequent creditor would reasonably make further inquiry" to determine whether specific items of collateral were actually encumbered, not on whether the financing statement adequately describes the collateral itself. *Id.* at 1249.

■ The trial court in this case focused on whether the description in PCA's financing statement adequately described the backhoe and trailer, and apparently did not consider whether the description was sufficient to put later creditors on notice that the backhoe and trailer might be encumbered. The financing statement covers "all farm machinery, equipment, supplies, feed, and livestock now owned or hereafter acquired." The trial court concluded that the word "farm" modifies the entire description, and that the backhoe and trailer are thus not covered by the financing statement because they are not "farm" equipment.

It is not clear that the trial court's interpretation of the collateral description is correct. It is not clear that the word "farm" is meant to modify each of the other types of collateral described. The word "equipment" stands alone, separated by commas, and arguably could refer to all types of equipment, not just farm equipment.

In any event, the trial court pursued the wrong line of inquiry in evaluating the collateral description. Instead of deciding whether the collateral description was precise enough to specifically identify the backhoe and trailer as encumbered equipment, the trial court should merely have considered whether the description was adequate to put Lowry and other subsequent

---

1. All parties apparently concede that the description of collateral in the April 21, 1980 security agreement between PCA and Bartos is broad enough to include the backhoe and trailer. The trial court did not discuss this issue. However, it is clear that the collateral described in the security agreement includes the backhoe and trailer. The agreement describes its collateral to include "all equipment, motor vehicles and fixtures, and all accessions thereto", whether owned at the time of the agreement or later acquired.

creditors on notice that the backhoe and trailer might be encumbered.

It is true that the collateral description in PCA's financing statement is somewhat ambiguous, because it is not absolutely clear whether the description refers to "all" equipment, or only to "farm" equipment. But although the description is arguably ambiguous, it is still clear enough to identify the general *type* of collateral subject to a security interest, that is, "equipment." This description is sufficient to reasonably induce subsequent creditors to investigate whether all, or only some, of Bartos' equipment was subject to PCA's security interest. *See World Wide Tracers*, 384 N.W.2d at 447; *James Talcott, Inc.*, 292 Minn. at 290, 194 N.W.2d at 783. Thus, the financing statement was sufficient to perfect PCA's security interest in the backhoe and trailer.

## II.

Lowry also argues that PCA did not perfect a security interest in the backhoe and trailer because PCA should have filed its financing statement with the Minnesota Secretary of State rather than the Pope County Recorder. Lowry relies on Minn. Stat. § 336.9–401(1)(b), (d) (1986), which provides that security interests in farm-related equipment and collateral are perfected by filing a financing statement with the county recorder, but that financing statements covering other types of equipment should be filed with the Secretary of State.

Even assuming that PCA should have filed a financing statement with the Secretary of State as well as the Pope County Recorder, its failure to do so does not defeat its security interest in the backhoe and trailer. Minn.Stat. § 336.9–401(2) (1986) provides:

A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against

any person who has knowledge of the contents of such financing statement.

PCA acted in good faith when it filed its financing statement with the Pope County Recorder. As discussed, the financing statement met the requirements of the Uniform Commercial Code. It is clear from the record that Lowry had "knowledge of the contents" of PCA's financing statement, and thus was not prejudiced by PCA's failure to file with the Secretary of State. Under these circumstances, PCA's financing statement is effective under Minn.Stat. § 336.9–401(2) (1986).

## III.

The "priority" of the competing security interests in this case is established by the order in which financing statements covering the collateral were filed. Minn.Stat. § 336.9–312(5) (1986). PCA's security interest in the backhoe and trailer has priority over Lowry's, because PCA filed its financing statement first.

### DECISION

REVERSED.