UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 97-11022
Summary Calendar

In the Matter of: VALUE-ADDED COMMUNICATIONS, INC.,

Debtor.

CLC EQUIPMENT COMPANY,

Appellant,

VERSUS

CHARLES BREWER, Trustee of Value-Added Communications Litigation Trust,

Appellee.

Appeal from the United States District Court
For the Northern District of Texas

May 6, 1998

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:

The CLC Equipment Company (CLC) leased a telephone processing system to Value-Added Communications, Inc. (VAC). VAC used that system to service the Minnesota state prisons under VAC's contract with the state to operate a telephone system for the inmates. VAC granted CLC a security interest in VAC's contract with Minnesota (the Site Leases), including the proceeds and revenues earned under that contract. In 1995, VAC filed a voluntary bankruptcy petition under Chapter 11. The bankruptcy court avoided CLC's security interest, finding that the financing statements were insufficient to perfect CLC's security interests in the revenues and proceeds of the Site Leases. The district court affirmed that judgment on appeal. Now, we affirm.

I.

On March 14, 1994, VAC and CLC entered into an Equipment Lease Agreement (the

Equipment Lease) under which CLC leased to VAC a System 20 inmate call processing system including coin-operated pay telephones. VAC installed this telephone system at five Minnesota state correctional facilities under VAC's Site Leases with the state. The Minnesota prison officials collected the money from the inmates for their use of the system.

The collateral at issue in this dispute is approximately $181,000 from inmates who used the telephone system VAC leased from CLC. The parties agree that there was a valid security agreement covering these funds. That security agreement states:

> [VAC] hereby grants, transfers and conveys to CLC all of its right, title and interest in and to each location Equipment Lease ("Site Lease") identified in Schedule "A" and in and to all revenues, rents, income and profits arising from each of said Site Leases and in and to each and every right lessee as to said Site Leases.

> [VAC] hereby grants to CLC a security interest in (i) all of Lessee's contract rights in said Site Leases, (ii) all of Lessee's rights to receipts pursuant to said Site Leases, and (iii) the proceeds, products, additions, replacements, substitutions, and extensions of said Site Leases.

On April 18, 1994 and April 20, 1994, CLC filed financing statements with the Texas Secretary of State and the Minnesota Secretary of State. Those financing statements described the collateral as follows:

> All equipment and other personal property and all modifications and additions thereto and replacements and substitutions therefore, in whole or in part, now or hereafter covered by that Equipment Lease Agreement dated 3/14/94 and all schedules now or hereafter referencing said lease between Secured Party, as lessor, and Debtor, as lessee. Secured Party and Debtor have entered into a valid lessor-lessee relationship and this is a precautionary filing only. * Proceeds of collateral are also covered but without power of sale.

The financing statements did not refer to VAC's contract with Minnesota.

After VAC filed its Chapter 11 bankruptcy petition, CLC claimed a security interest in the $181,000 collected by Minnesota under its contract with VAC. The Trustee of VAC's bankruptcy estate attacked that security interest, arguing that the financing statements were inadequate to cover the money collected under the Site Leases. The bankruptcy court agreed. The financing statements covered the equipment described in the Equipment Lease as well as the proceeds of that equipment, but the financing statements made no reference to the Site Leases or the revenues and proceeds of

2

those Site Leases. The funds at issue here were revenues from the Site Leases. On appeal, the district court affirmed.

## II.

To determine whether CLC's security interest was perfected, we apply Minnesota law.[1] A financing statement must reasonably describe the collateral that is covered by the security interest. "A collateral description in a financing statement should be held adequate to perfect a security interest in an item of property if the description reasonably provides prospective creditors with inquiry notice regarding the type of property at issue."[2] Collateral descriptions are liberally construed, and the identification of a particular type of collateral is usually sufficient.[3]

Our first step in evaluating these financing statements is to determine whether these statements provide adequate notice "so that a subsequent creditor would reasonably make further inquiry."[4] The financing statements refer to equipment and personal property covered by the Equipment Lease as well as proceeds of that collateral. A creditor making a reasonable inquiry would consult the Equipment Lease. The express language of the financing statements covers no more than the items in the Equipment Lease. A reasonable inquiry, then, would be limited to that agreement because, to perfect a security interest, the financing statement must describe the collateral.[5] These

---

[1]  *See Howard Thornton Ford. Inc. v. Fitzpatrick*, 892 F.2d 1230, 1232 (5th Cir. 1990).

[2]  *World Wide Tracers, Inc. v. Metropolitan Protection, Inc.*, 384 N.W.2d 442, 447 (Minn. 1986).

[3]  *Id*.; *Thorp Comm. Corp. v. Northgate Indus.*, 654 F.2d 1245, 1249 (8th Cir. 1981); Minn. Stat. § 336.9-402(1).

[4]  *Production Credit Assoc. v. Bartos*, 430 N.W.2d 238, 241 (Minn. Ct. App. 1988).

[5]  CLC argues that a reasonable inquiry in this case includes looking at the security agreement. We disagree. Article 9 financing statements are intended to give notice of the collateral covered by security interests.

> The theory of notice filing is that a reasonable diligent searcher will be put on notice not only of a security interest but also on notice of what collateral is covered by the security agreement. Thus, no reported case upholds total omission of a description from the financing statement. Such a financing statement fails in one of its fundamental notice functions. . . . [T]he reasonable searcher may safely conclude

3

financing statements do not describe collateral beyond that in the Equipment Lease.

The funds at issue here are not described in the Equipment Lease, nor are they proceeds of the items described. "Proceeds includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds."[6] The funds collected from the prisoner were the product of the use of the equipment. Use is not a disposition of the collateral within the meaning of the definition of "proceeds".[7] If fruits and products from the use of collateral were treated as proceeds, every creditor with a security interest in equipment would have a security interest in all items produced from the equipment as well as the revenues earned by the equipment. The revenues earned from the inmate's use of the equipment were the proceeds of the Site Leases.[8] CLC's financing statements do not cover those leases.

III.

For the foregoing reasons, the judgment is AFFIRMED.

---

that collateral not described in the financing statement is not encumbered, at least not by this creditor.

James J. White & Robert S. Summers, 4 *Uniform Commercial Code* 208 (4th ed. 1995). CLC drafted the financing statement and chose to describe the collateral in more detail than was required. CLC's narrow descript ion excluded the Site Leases and the revenues and proceeds from the Site Leases from its coverage. CLC must live with the consequences of the collateral description it drafted.

[6] Minn. Stat. § 336.8-306(1).

[7] *See Kingsley v. First American Bank*, 865 F.2d 975, 980-1 (8th Cir 1989).

[8] CLC attempts to argue that the money received from the inmates for the use of the telephones is "proceeds" of the equipment leased to VAC. CLC relies upon *In re Cleary Brothers Construction Co.*, 9 B.R. 40, 41 (Bankr. S.D. Fla. 1980), *Feldman v. Philadelphia Nat'l Bank*, 408 F.Supp. 24, 37-38 (E.D. Pa. 1976), and *In re Keneco Financial Group*, 131 B.R. 90 (Bankr. N.D. Ill. 1991). Each of those cases illustrates the flaw in CLC's argument. The rent received for the use of the assets in those cases was proceeds of the lease contracts, not the physical items leased. In the present case, the money received from the inmates is, without question, proceeds of the Site Equipment Leases between VAC and the state. CLC's security interest is unperfected because the financing statements omitted any description of those Site Leases or the category of collateral under which those leases fall.

4